IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AMONTE A. JACKSON,

Plaintiff,

v.

TIMOTHY KOLECHECK, BRADY BLODGETT, and AUSTIN KINAS,

Defendants.

OPINION and ORDER

25-cv-432-jdp

---

Plaintiff Amonte Jackson, proceeding without counsel, is currently a prisoner at Racine Correctional Institution. Jackson alleges that, when he was a prisoner at Stanley Correctional Institution, prison staff humiliated him by cutting off his clothes in front of other inmates as part of a strip search. I granted Jackson leave to proceed on claims under the Fourth and Eighth Amendments to the United States Constitution. Dkt. 8.

Defendants move for summary judgment. Dkt. 31. Regarding the Fourth Amendment claim, no reasonable jury could conclude that the search was unreasonable under the circumstances. As for the Eighth Amendment claim, no reasonable jury could conclude that defendants conducted the search to humiliate Jackson. Accordingly, I will grant defendants' motion and dismiss the case.

## PRELIMINARY MATTER

This case concerns a March 2023 incident in which defendants strip searched Jackson. Jackson has filed two motions regarding video footage of a subsequent incident from May 2023 in which Jackson threatened to hang himself; Jackson states that the footage of that incident would show that defendants admitted to wrongdoing during the March 2023 strip search. In

his first motion, Jackson seeks an order directing defendants to submit to the court a copy of video footage that he previously reviewed but that he no longer had in his possession. Dkt. 43. Defendants responded by submitting a copy of that footage. *See* Dkt. 47-1 (placeholder entry for the footage). So I will deny that motion as moot.

Jackson followed with a second motion, seeking an order compelling production of additional footage from a time before that captured in the footage already provided by defendants, and noting that contemporaneous incident reports suggested that officers used two cameras during the incident. Defendants respond that Jackson didn't confer with them about this second video before filing his motion to compel, that a second video would be redundant and thus irrelevant, and that after repeated communications with DOC staff to locate more footage, staff responded that the video already on the record was the only footage retained by the prison.

I disagree with defendants that additional footage would be irrelevant, because it's unclear that it would be completely redundant to the footage already submitted. As for Jackson's failure to confer, this court has previously denied motions to compel filed by Jackson because he didn't show that he had conferred with defendants before filing them. Dkt. 22 and Dkt. 30. Jackson again hasn't shown that he conferred with defendants. But in any event, I will deny this motion because defendants show that they repeatedly communicated with DOC staff about obtaining video footage of the May 2023 incident and that there simply isn't additional footage for defendants to produce.

UNDISPUTED FACTS

On to defendants' motion for summary judgment. The following facts are undisputed unless otherwise noted. All relevant events took place while plaintiff Amonte Jackson was incarcerated at Stanley Correctional Institution, where defendants Captain Timothy Kolecheck, Sergeant Brady Blodgett, and Officer Austin Kinas all worked.

**A. Strip search policies**

Defendants provide the following information about the prison's strip search policies, which Jackson doesn't dispute. When inmates inform prison officials that they may harm themselves, the inmate may be moved to an observation cell to mitigate the risk of self-harm. Before that transfer, the inmate must undergo a strip search to make sure that he does not possess contraband that poses a risk to himself or others. Generally, strip searches can come in two forms: visual and staff-assisted. For visual strip searches, an inmate is placed into a strip cell where he is told to undress and assume specified positions while an officer monitors him through the transparent door. If an inmate fails to comply with these commands, then prison officials perform a cell entry.

Prison staff may also elect to perform a staff-assisted strip search, which usually occur in the cell doorway of the cell that the inmate is being placed in. This type of search is more invasive. Staff members physically restrain an inmate while another uses shears to cut off the inmate's clothes. After the clothing is removed and checked for contraband, the inmate's body is searched, including an officer using a bladed hand to check under the prisoner's testicles and between his buttocks.

**B. March 2023 strip search**

This case is about a strip search that occurred on March 9, 2023. While in segregated lockup for an unrelated conduct issue, Jackson indicated that he was suicidal and requested a transfer to clinical observation. Defendant Kolecheck asked Jackson multiple times whether he would comply with a strip search. Defendants say that Jackson initially wouldn't answer him. Jackson disputes this, saying that he answered every time that he would comply. I will accept Jackson's version of the facts as true for purposes of summary judgment. Kolecheck decided to conduct a staff-assisted strip search, in part because the strip cells were already occupied and thus weren't available for a visual search instead. Jackson attempts to dispute that the strip cells were occupied, but nothing in his materials establishes how he had personal knowledge about the occupancy of the strip cells. So I will accept defendants' proposed finding that the strip cells were occupied.

The parties' proposed findings and video footage from the observation cell (without audio) document the strip search itself. Kinas tethered Jackson to the door of the observation cell, with Jackson's back facing out into the hallway. Dkt. 35-2 (placeholder entry for the footage), at 0:54. Jackson removed his shoes and Kinas removed Jackson's socks. *Id.* at 1:06–1:35. Kolecheck ordered Blodgett and Kinas to remove Jackson's pants and underwear. At this point at least two of the defendants (from the footage the location of each defendant isn't always clear) stood behind Jackson in the doorway as Jackson remained about a step inside of the cell. Jackson faced into the cell as Blodgett and Kinas removed his pants and underwear, leaving Jackson's genitals and buttocks exposed. *Id.* at 2:12–2:24. Kolecheck left the area to obtain shears, while the other two defendants remained behind Jackson. *Id.* at 2:39. Kolecheck returned with the shears about 25 seconds after leaving and Kinas cut off Jackson's shirt,

leaving him completely naked. *Id.* at 3:03–3:35. Defendants visually inspected Jackson while removing his clothes. They did not perform bladed-hand touching of Jackson's testicles or buttocks. They then shut the door, uncuffed him from the outside of the door, and passed him an observation smock. *Id.* at 3:38–4:10. Jackson states that he heard other inmates laughing at him during the search.

**C. May 2023 incident**

According to Jackson, the strip search deeply traumatized him, at least in part because it reminded him of sexual abuse that he had suffered as a child (there's no evidence that defendants were aware of this vulnerability). This led to Jackson threatening to kill himself on May 24, 2023. Jackson asserts that there is video evidence of this incident in which "you can hear Defendant Brady Blodgett admit wrongdoing ordered by Kolecheck to humiliate [Jackson]." Dkt. 42, ¶ 20.

That day, Jackson climbed over a second-story safety railing, tied a blanket to the railing and to his neck, and threated to hang himself by jumping off. Video provided by the DOC starts with Jackson already over the railing with the blanket tied. Prison staff, including Blodgett, are positioned on both the first and second levels (the parties do not explain who is present or talking at any given point). At the outset, Jackson condemns the staff for how they conducted the March 2023 strip search. Dkt. 47-1, at 0:00–0:30. Various prison staffers can be heard repeatedly attempting to explain to Jackson that the strip search was conducted outside of the observation cell because the strip cells were unavailable at that time. *Id.* at 0:35–0:40; 3:03–3:35. Eventually, the conversation moves away from the strip search and toward Jackson's potential transfer to another facility. *Id.* at 5:00–6:00. As the discussion continues, staff members make the following comments:

- "I'm sorry that that had to happen that way." *Id.* at 7:13–7:15.
- A difficult-to-make-out comment sounding like, "We know we messed up. We're gonna move forward from this." *Id.* at 8:24–8:29.
- "I know what happened to you is traumatizing." *Id.* at 17:39–17:41.

Otherwise staff members repeatedly tell Jackson that no one wanted to see him get hurt and that they all wanted to see him get safely back over the railing. Jackson eventually climbs back over the railing and is detained. *Id.* at 22:00–22:40.

## ANALYSIS

I granted Jackson leave to proceed on claims under the Fourth and Eighth Amendments. Jackson's claims concern two interrelated violations of his constitutional rights. First, I must determine whether the strip search was objectively unreasonable and thereby violated his Fourth Amendment right to bodily privacy. Second, I must determine whether defendants subjectively intended to punish Jackson with the strip search, in violation of the Eighth Amendment. For the following reasons, neither claim survives defendants' motion for summary judgment.

### A. Fourth Amendment

Although "strip searches may be unpleasant, humiliating, and embarrassing to prisoners . . . not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). Under the Fourth Amendment, individuals have a right to bodily security from unreasonable searches, including strip searches. U.S. Const. amend. IV.; *Henry v. Hulett*, 969 F.3d 769, 775 (7th Cir. 2020). But prisoners retain a "severely limited" version of this right while incarcerated, subject to reasonable intrusions demanded by the realities of prison life. *Henry*, 969 F.3d at 779. In

assessing reasonableness, I must consider factors such as the justification, location, scope, and manner of the intrusion. *Id.* When evaluating reasonableness in the prison context, I must afford prison administrators wide-ranging deference in the adoption and execution of policies and practices necessary to preserve institutional order, discipline, and security. *Id.* at 783.

As a preliminary matter, Jackson argues that the May 2023 video helps to prove his claim under the Fourth Amendment because it shows that defendants intended to humiliate him and knew that they did. Dkt. 38, at 6. But defendants' subjective states of mind are irrelevant to my Fourth Amendment analysis. *Henry,* 969 F.3d at 781.

Returning to the *Henry* factors, there is no genuine dispute that the strip search of Jackson was justified by a valid penological purpose. Inmates who report being at risk of self-harm need to be deprived of all possessions that may allow them to act on those impulses. Defendants have therefore articulated a valid reason for why the search was necessary to preserve institutional security, an issue to which I must afford them great deference. *Alicea v. County of Cook*, 88 F.4th 1209, 1217 (7th Cir. 2023).

As for the location of the strip search, defendants chose to perform it at the entrance of the observation cell because that's where staff-assisted searches were typically performed and, in any event, the strip cells were occupied. Defendants assert that the location was reasonable because it would allow Jackson to be quickly secured at the conclusion of the search. Jackson argues that the strip search could have been performed inside his original cell instead. But there's a legitimate reason why defendants would take Jackson to a new site for the strip search: to take the prisoner away from potential contraband in the old cell.

That leaves the scope and manner of the search. Jackson argues that the specific type of search—a staff-assisted search rather than a visual one—wasn't necessary because he was

compliant with the officers. But compliance alone does not determine whether a prison official's decision to perform a staff-assisted strip search is reasonable. *See Lindell v. Cushing*, No. 19-C-704, 2022 WL 901560, at *4 (E.D. Wis. Mar. 3, 2022) (decision to conduct staff-assisted strip search was reasonable even where inmate "calmly assured staff" that he would cooperate). Here, the staff-assisted search was justified by the valid penological purpose of keeping Jackson from harming himself with clothes that he would have retained in his cell. And in any case, defendants chose not to subject Jackson to the most invasive components of a staff-assisted strip search, like bladed-hand touching of his testicles or buttocks.

Jackson focuses on the fact that the search was not done in complete privacy. He provides testimony from another prisoner who says that he could see the search. Dkt. 42-11. But as a general matter prisoners aren't entitled to complete privacy regarding nudity. And the video and other evidence make clear that defendants moved Jackson to at least a semi-private location to conduct the search; it was not performed in the open for all to see. Jackson stood slightly inside the observation cell facing the interior, so his backside, not his genitals, were facing out the door. Either two or all three of the defendants stood behind him at various points during the search, further obscuring the view. And Jackson was pantsless with the cell door open for only about 90 seconds.

To summarize, even drawing all reasonable inference from the facts in Jackson's favor, all that occurred here was a quick, relatively run-of-the-mill strip search that was at most partially seen by a handful of prisoners at a distance. Given the legitimate penological interest defendants had in performing the search of an inmate threatening self-harm, no reasonable jury could conclude that the strip search was unreasonable. So I will grant summary judgment to defendants on this claim.

**B. Eighth Amendment**

Under the Eighth Amendment, prison staff cannot subject prisoners to strip searches that are subjectively intended to serve as a form of punishment. *Henry*, 969 F.3d at 781. To win an Eighth Amendment claim, Jackson must show that (1) there was no legitimate justification for defendants' actions; or that (2) defendants acted in a harassing manner, subjectively intending to humiliate Jackson and inflict psychological pain. *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009).

I have already explained the legitimate reasons that defendants had to perform the strip search. Regarding the manner of the search itself and defendants' intent to harass or humiliate Jackson, I may consider facts such as whether officers made demeaning comments during the search or gratuitously touched Jackson. *See id.*, at 650; *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012). But that didn't happen here: it's undisputed that defendants didn't make demeaning comments or touch Jackson's private areas. Rather, the video shows defendants conducting the search in a professional manner. There was a short delay caused by defendants having to retrieve the shears to cut Jackson's shirt off, but at most that suggests negligence on their part, not a desire to humiliate Jackson by prolonging his nudity.

Nevertheless, Jackson argues that defendants performed the search to humiliate him because they violated prison regulations in various ways and they later admitted to him that their intention was to humiliate him.

I'll begin with Jackson's argument about prison procedures. He says that they chose a staff-assisted search even though he was compliant, they didn't take him to a strip cell, that they didn't wear body cameras during it, and that they didn't have the usual number of staffers present of that type of search. Evidence that prison staff violated strip search procedures can

be evidence of an intent to harass, but procedural noncompliance alone does not create a constitutional violation. *Mays*, 575 F.3d at 650. Here Jackson doesn't show that defendants actually violated procedures with regard to some of these points (it's undisputed that staff retained the discretion to perform staff-assisted searches even for compliant prisoners and that that type of search wasn't usually performed in a strip cell), and for the others there isn't a reasonable inference that defendants made the choices they did to harass or humiliate Jackson. For instance, defendants didn't wear body-worn cameras but they knew that the in-cell camera would record the search instead, which it did. And defendants explain that they proceeded to a three-officer strip search given the urgency of Jackson's self-harm threat and the fact that other officers were busy; it's simply not a reasonable inference to suggest that they proceeded with fewer officers so that they wouldn't be able to block other inmates' view of the observation cell in an attempt to humiliate Jackson.

As for Jackson's assertion that defendants admitted to performing the search to humiliate him, Jackson says that during the May 2023 incident in which he threatened to hang himself while standing on the edge of the second story, Blodgett "admit[ted] wrongdoing ordered by Kolecheck to humiliate [him]." Dkt. 42, ¶ 20. Jackson isn't directly quoting Blodgett; rather he is interpreting Blodgett's comments as an admission. From the video of the incident, no reasonable jury could agree with Jackson's interpretation of the things said during that incident as an admission by Blodgett that defendants had performed the search to humiliate Jackson. Given the difficulty of parsing which staff member made each statement on the video, I'll attribute every statement to Blodgett. But in context, none of these statements can be seen as an admission of an Eighth Amendment violation. Rather, Blodgett repeatedly explained that Jackson couldn't have been searched in a strip cell because they were full—an

explanation for why a less public search wasn't performed, not an admission of maliciousness. The only reasonable inference from comments like the one about how defendants "messed up" was that Blodgett was trying to talk Jackson off the ledge, and expressing regret that Jackson was so traumatized by the strip search that he contemplated suicide as a result.

In filing his motion to compel production of a second video of the May 2023 incident, Jackson asserts that the relevant admission is actually on the missing second video. But that footage doesn't exist. And Jackson didn't need video to recount what Blodgett said; he could have put those comments in his declaration but did not. Summary judgment is the "put up or shut up" moment of litigation, at which the non-moving party must demonstrate that he has evidence that requires a trial. *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022). The evidence that the parties have submitted shows only that defendants conducted the staff-assisted strip search in a professional manner, devoid of any hallmarks of misconduct that would violate the Eighth Amendment. So I will grant summary judgment to defendants on this claim, and I will dismiss the entire case.[1]

## ORDER

IT IS ORDERED that:

1. Plaintiff's motion to produce video footage, Dkt. 43, is DENIED as moot.
2. Plaintiff's motion to compel, Dkt. 51, is DENIED.
3. Defendants' motion for summary judgment, Dkt. 31, is GRANTED.

---

[1] Because I am granting summary judgment to defendants on the merits, I need not address their qualified immunity arguments.

4. The clerk of court is directed to enter judgment in favor of defendants and close the case.

Entered November 13, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge